## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF IDAHO

_____

In Re:

**Aaron A. De Bruyn Kops,**

           **Debtor.**

**Bankruptcy Case
No. 11-41153-JDP**

_____

## MEMORANDUM OF DECISION
_____

**Appearances:**

> Aaron Tolson, TOLSON LAW OFFICES, Ammon, Idaho, Attorney for Debtor Aaron A. De Bruyn Kops.

> Robert J.Maynes, MAYNES TAGGART PPLC, Idaho Falls, Idaho, Attorney for Samantha De Bryun Kops.

### Introduction

Chapter 7[1] debtor Aaron de Bruyn Kops ("Debtor") based his means

_____

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

MEMORANDUM OF DECISION - 1

test calculations on a household of three,[2] and estimated his expenses for

childcare costs.  Creditor Samantha de Bruyn Kops ("Creditor"), Debtor's

former spouse, filed a Motion to Dismiss Debtor's case, asserting a

presumption of abuse exists under § 707(b).  She argues that, for means test

purposes, Debtor has a household of 1.34 due to the couple's split-custody

of their children.  Creditor also asserts Debtor's actual childcare expense is

much lower than his estimates, and that his calculations should be adjusted

accordingly.  A hearing on Creditor's motion was held January 10, 2012,

and, after additional briefing, the Court took the issues under advisement.

After considering the evidence, testimony, the parties' submissions, and

applicable law, this Memorandum sets forth the Court's findings of fact

and conclusions of law.  Rule 7052, 9014.

**Facts**[3]

---

[2] Initially, Debtor based his means test calculations on a household of
four, including himself, his then live-in girlfriend, and his two minor children.
He has since revised those calculations based on a household that includes only
himself and his two children.

[3] Unless otherwise noted, these undisputed facts are derived from the
(continued...)

MEMORANDUM OF DECISION - 2

Debtor and Creditor married on February 14, 2004; in early May 2010, Creditor filed for divorce.  The couple has two children.

On July 9, 2010, the state court entered a temporary order in Creditor's divorce action ("July 9 Order").  Exh. 202.  That order was to be effective until the court finalized the couple's divorce, and provided that Debtor and Creditor would have joint legal custody of their children, with physical custody awarded to Creditor.  *Id.*  The order granted Debtor "supervised visitation" with the children during the pendency of the divorce action, but provided no guidance on when, or for how long, each visit should occur.  *Id.*

The July 9 Order also divided and assigned responsibility for payment of some the couple's financial obligations.  Debtor was ordered to pay Creditor $1,188 per month in child support.  *Id.*  The costs of "day care" for the couple's children was ordered divided between the two, with Debtor responsible for 61% of the costs, and Creditor responsible for 39%.

---

[3](...continued)
testimony at the hearing and as presented in the parties' pre- and post-hearing briefs.

MEMORANDUM OF DECISION - 3

*Id.*  The state court deferred any decision as to liability for "the preschool expense for the Calvary Christian School that their oldest minor child will attend this fall [of 2010]."  *Id.*

The state court entered a final divorce decree on September 15, 2011, *nunc pro tunc* as of February 24, 2011 ("Final Order").  Exh. 204.  The Final Order granted Creditor "primary residential custody" of the couple's children, specifying that Debtor have physical custody of the children "every other weekend," alternating holidays, and for two weeks of consecutive time during the summer.  *Id.*

The Final Order continued Debtor's obligation to provide $1,188 per month in child support.  *Id.*  The order also continued the percentage distribution assigned the parties for "work-related day care."  *Id.*  In addition, the Final Order required Debtor to pay 61% of "the Calvary Chapel Preschool debt," and of "the Monarch Day Care bill."  *Id.*

For the 2010 tax year, the Final Order allowed each parent to claim a child for tax exemption purposes; for 2011 and thereafter, Debtor would be allowed to claim both children as dependents.  *Id.*

MEMORANDUM OF DECISION - 4

Debtor filed for chapter 7 bankruptcy relief on July 13, 2011.  Dkt.

No. 1.  No evidence was provided to the Court regarding who was

physically present in Debtor's home on that date.[4]

The parties' offered evidence documenting day care expenses is not

much better.[5]  Based on that record, Debtor's and Creditor's total childcare

expense for the six month period prior to July 13, 2011,[6] was roughly

$2,975, or about $496 per month.  Per the state court orders, Debtor's share

---

[4] As July 13 was a Wednesday, it is likely the children were residing with
Creditor at the time.

[5] Creditor stated that, prior to the summer of 2011, her older child
attended Calvary Chapel Christian School ("CCCS"), while her younger child
attended The Monarch day care, and that both children attended The Monarch
during the summer.  The Court was not given any invoices or other proof of
costs for CCCS services provided prior to the fall of 2011.  In addition, while
there was, apparently, an increase in the number of Debtor's and Creditor's
children who attended The Monarch during the summer of 2011, in the invoice
admitted in evidence from The Monarch, covering January 2011 through July
2011, there is no apparent change between the pre-summer and summer month
charges.  Because there is no evidence of other day care services, or their costs,
prior to July 13, 2011, the Court will consider only those costs charged by, and
paid to, The Monarch.

[6] Creditor asserts certain expenses could alter Debtor's means test
calculations.  Any expenses that might potentially do so must have occurred in
the six months prior to Debtor's filing date, and the Court will focus on the
expenses incurred in that span.

MEMORANDUM OF DECISION - 5

of that total was $1,814.75, or about $302.46 per month.  Payments of $1,500

were made to The Monarch during the six months prior to July 13, 2011,

and Debtor testified he made $900 of those payments.[7]  Averaged out, that

$900 equates to payments of $150 per month.  Yet, Debtor's most recent

amended Form B22A[8] indicates Debtor based his means test calculations

on a monthly childcare expense of $500 per month.

Debtor's revised Form B22A provides he has a monthly disposable

income under § 707(b)(2) of negative $235.56.[9]

Creditor argues Debtor's means test calculation should be further

---

[7]  Only $400 of those payments are clearly attributed to Debtor on the
billing statement from The Monarch.  In addition, of the $900, $500 was paid
January 14, 2011, at the very beginning of the six month look-back period, and
was for services presumably provided prior to that period.  At the same time, the
invoice shows Debtor made a $200 payment on July 26, 2011, after the petition
date, but for services provided during the six months prior to Debtor's petition.

[8]  The Court instructed Debtor at the January 10, 2012, hearing on this
matter to update his Form B22A.  While he removed some previously included
expense amounts, such as for the mortgage on the couple's home, he left the
childcare expense amount at $500 per month.

[9]  Though Debtor dropped two secured claims payments from his means
test calculation, he increased his expense amount for "food, clothing, and other
items" by $637.  For some reason, he used the amount for "one person" in his
initial Form B22A.  His amended form uses the amount for "three persons."

MEMORANDUM OF DECISION - 6

adjusted for two reasons.  First, Creditor asserts that, because Debtor only

has custody of their children part time, Debtor's proper household size for

the purposes of the means test is 1.34 persons, not 3 persons.  Second,

Creditor asserts Debtor's childcare expense should reflect the amount he

actually paid, not $500 per month.[10]  Debtor disagrees with Creditor's

position on both counts.

## Discussion

## I.     Debtor has a household of three for means test purposes.

The correct number of persons to use in completing means test

calculations has been a source of confusion since the passage of the 2005

amendments to the Bankruptcy Code ("BAPCPA").  Courts have

developed three different standards for application in determining what

the correct number should be:  the "heads on beds" or Census Bureau

approach; the "IRS dependency" approach; and the "economic unit"

---

[10]  It is unclear why Debtor determined his claimed expense should be
$500 per month.  While there is evidence that Debtor's and Creditor's total
monthly childcare costs are historically and currently about $500 per month, the
couple's divorce decree directs that Debtor's portion of that obligation is only
about $305 per month.

MEMORANDUM OF DECISION - 7

approach.

     1.    <u>The Heads on Beds or Census Bureau Approach</u>.

The first approach adopted by some bankruptcy courts, the so-called "heads on beds" approach, includes anyone living in a debtor's home at the time he or she files for bankruptcy as part of a household for means test calculations purposes. *See, e.g.*, *In re Ellringer*, 370 B.R. 905, 910–11 (Bankr. D. Minn. 2007).

Sections 707(b)(6) and (7) tie a bankruptcy court's ability to dismiss or convert a chapter 7 case to a comparison of the debtor's "current monthly income" to national "median family income" figures for a "household" of the same size as the debtor's. While the term "household" is not defined in the Code, "median family income" is, and means "the median family income both calculated and reported by the Bureau of the Census in the then most recent year." § 101(39A)(A).

Because of this provision's reference to the Census Bureau (the "Bureau"), bankruptcy courts have consulted that agency for a definition of "household." *See, e.g.*, *In re Epperson*, 409 B.R. 503, 506–07 (Bankr. D.

MEMORANDUM OF DECISION - 8

Ariz. 2009); *In re Ellringer*, 370 B.R. at 910–11.  The Bureau defines

"household" to "consist[] of all the people who occupy a housing unit . . .

includ[ing] the related family members and all the unrelated people, if any,

such as lodgers, foster children, wards, or employees who share the

housing unit."  U.S. Census Bureau, *Current Population Survey (CPS) -*

*Definitions and Explanations*, www.census.gov/ population/ www/ cps/

cpsdef.html.  Grasping that definition, some bankruptcy courts have

assumed the Bureau's definition of household must apply to all means test

components, rationalizing that doing so "ensures that a household in the

means test will have the same number of members as the calculation of

median family income."  *In re Ellringer*, 370 B.R. at 910–11.

Respectfully, the error in this reasoning is plain.  Section 101(39A)(A)

refers to the Bureau's calculated and reported figures for "median family

income," not "median household income."  The Bureau produces figures

for both, and the methodology used in calculating either figure primarily

hinges on the differences in the Bureau's definitions of "family" and

"household."  *See* U.S. Census Bureau, *2010 Subject Definitions* at 80,

MEMORANDUM OF DECISION - 9

www.census.gov/ acs/ www/ Downloads/ data_documentation/

SubjectDefinitions/ 2010_ACSSubjectDefinitions.pdf.

The Bureau's statistics on household income include not only the

income of a dwelling unit's owner or renter, but also the income for "all

other individuals 15 years old and over in the household, whether they are

related to the [owner or renter] or not." *Id.* Such is the type of

"household" integrated into the heads on beds approach. *See In re*

*Ellringer*, 370 B.R. at 911 (relying on the Bureau's definition of household as

"all of the people, related and unrelated, who occupy a housing unit").

At the same time, "[i]n compiling statistics on family income, the

incomes of all members 15 years old and over related to the [owner or

renter] are summed and treated as a single amount." U.S. Census Bureau,

*2010 Subject Definitions* at 80. Only those members "residing" with the

owner or renter at the time the Bureau conducted its interview, have their

income included in the family income statistics.[11] *Id.* Thus, while the

---

[11] This is consistent with the Bureau's definition of "family household,"
which also defines "family," and provides:

(continued...)

MEMORANDUM OF DECISION - 10

Bureau's "household"-based statistics account for all persons living in a

home, regardless of relationship, the "median family income" figure

referred to by Congress in § 707(b)(6) and (7) incorporates only the income

of related individuals residing in a home.  *See id.*

Applying the Bureau's "household" definition to all aspects of the

means test would not "ensure[] that a household in the means test will

have the same number of members as the calculation of median family

income."  *Contra In re Ellringer*, 370 B.R. at 910–11.  Rather, any time

unrelated individuals live in a debtor's home, the Bureau's definition of

"household" will produce a number greater than the "family" upon which

---

[11](...continued)

> A family consists of an [owner or renter] and one or
> more other people living in the same household who
> are related to [that person] by birth, marriage, or
> adoption.  All people in a household who are related
> to the [owner or renter] are regarded as members of
> his or her family.  A family household may contain
> people not related to [that person], but those people
> are not included as part of [his or her] family in
> tabulations.

U.S. Census Bureau, *2010 Subject Definitions* at 6.

MEMORANDUM OF DECISION - 11

the median family income figure is calculated,[12] creating an inconsistency

between that figure and the figure upon which the remaining means test

calculations would be based.  Because the Bureau's "household" definition,

upon which the heads on beds approach is based, does not correlate to the

Bureau's definition of "median family income," it should not, absent clear

direction from Congress, be applied throughout the means test.

2.      The IRS Dependency Approach.

The second approach adopted by bankruptcy courts tasked to

determine who is appropriately included in a debtor's means test

calculations looks not to the Census Bureau, but to the IRS.  *See In re*

*Robinson*, 449 B.R. 473, 479 (Bankr. E.D. Va. 2011).  Under § 707(b)(2), a

debtor is limited to claiming means test expenses for himself, his

"dependents," and his spouse in a joint case, if she is not otherwise a

dependent.  § 707(b)(2)(A)(ii)(I).  Because the expenses which a debtor can

---

[12]  The Bureau data for use in means test calculations, as provided by the
Justice Department on its website, is "Census Bureau Median Family Income by
*Family Size*," not by household size.  *See* www.justice.gov/ ust/ eo/ bapcpa/
20110315/ bci_data/ median_income_table.htm (emphasis added).

MEMORANDUM OF DECISION - 12

claim under the means test are primarily those included in various

standards issued by the IRS, and because the standards may only be

deducted for a debtor or his "dependents," bankruptcy courts following

the IRS dependency approach have limited the definition of "household"

for means test purposes to a person the debtor may claim as a dependent

on his tax return.  *In re Morrison*, 443 B.R. 378, 385 (Bankr. M.D.N.C. 2011).

However, while the § 707(b)(2) expenses are limited to amounts a

debtor can claim for himself and his "dependents," there is no indication

Congress intended the term "household," or even the term "dependents,"

to be limited to persons that may be claimed as dependents for tax

purposes.  The first step in determining the meaning of a federal statute's

language is to look at the text's plain meaning.  *Father M. v. Various Tort*

*Claimants (In re Roman Catholic Archbishop of Portland)*, 661 F.3d 417, 432–33

(9th Cir. 2011).  Words in the text are to be given their ordinary meanings,

unless otherwise defined.  *See id.*  Dictionary definitions may be used to

determine specific language's plain, ordinary meaning.  *See id.*  Section

707(b)(2) does not assign a specialized definition or meaning to the word

MEMORANDUM OF DECISION - 13

"dependent."  Turning to the dictionary, "dependent" is defined as "[o]ne

who relies on another for support."  BLACK'S LAW DICTIONARY 503 (9th ed.

2009).  Because that definition is much broader than a dependent for tax

purposes only, the Court concludes the IRS dependency approach is not

appropriate for use throughout the means test.

   3. <u>The Economic Unit Approach</u>.

   The third judicially developed approach is known as the "economic

unit approach."  Initially, in construing § 707(b)(2)(A)(ii)(I), bankruptcy

courts dissatisfied with the other two approaches considered household

members to be anyone who was a debtor's "dependent" in a general sense

of the word, *i.e.*, someone financially supported by the debtor.  *See In re

Herbert*, 405 B.R. 165, 169–70 (Bankr. W.D.N.C. 2008); *In re Jewell*, 365 B.R.

796, 800–02 (Bankr. S.D. Ohio 2007).  More recently, though, the courts

have fashioned a test that deems a person a member of a debtor's

household if that person operates as a "single economic unit with the

debtor."  *See, e.g., In re Morrison*, 443 B.R. at 388.  In defining "economic

unit," some courts have gone beyond the Code's language, and developed

MEMORANDUM OF DECISION - 14

a list of factors to be considered in determining whether the debtor and
another are such a unit.[13] *Id.*  Respectfully, those courts go too far.

The Code does not look to whether there is an integrated financial
relationship between a debtor and another person for whom he is claiming
expense deductions.  *See* § 707(b)(2)(A)(ii)(I).  In many cases, following that
approach would turn the language of the Code on its head.  For example,
under *In re Morrisson*, an individual whose only financial connection to a
debtor is one by which she supports the debtor is likely considered an

---

[13] For example, *In re Morrison* provides:

> In applying the economic unit test, the Court will
> consider all the facts and circumstances on a case-by-
> case basis.  Such factors include:  1) the degree of
> financial support provided to the individual by the
> debtor; 2) the degree of financial support provided to
> the debtor by the individual; 3) the extent to which
> the individual and the debtor share income and
> expenses; 4) the extent to which there is joint
> ownership of property; 5) the extent to which there
> are joint liabilities; 6) the extent to which assets
> owned by the debtor or the individual are shared,
> regardless of title; and 7) any other type of financial
> intermingling or interdependency between the debtor
> and the individual.

443 B.R. at 388.

MEMORANDUM OF DECISION - 15

"economic unit" with the debtor, and is a "household" member for means test purposes. *See* 443 B.R. at 386. The Code, however, does not allow a debtor to claim means test expenses for an individual of whom he is a dependent; he may only claim such expenses for persons that are dependent on him. *See* § 707(b)(2)(A)(ii)(I).

As noted, the dictionary defines "dependent" as one who relies on another for support. That definition is consistent with the definition of "household" from early "economic unit" approach cases. Namely, a household for means test purposes involves a debtor, those financially supported by the debtor, and the debtor's spouse in a joint case if she does not otherwise rely on the debtor for support. § 707(b)(2)(A)(ii)(I); *In re Herbert*, 405 B.R. at 169–70; *In re Jewell*, 365 B.R. at 800–02.

Inasmuch as the economic unit approach is limited to a unit consisting of a debtor and his dependents, such an approach is appropriate for use throughout the means test. In other words, the correct approach is one that determines household members based on a person's financial

MEMORANDUM OF DECISION - 16

dependence upon, and residence with, a debtor.[14]

    4.    <u>Application of the Test to the Facts</u>.

Having settled which general approach this Court will use in determining "household" members for means test purposes,[15] the question remains of how to treat otherwise dependent children who only reside with a debtor for a portion of the time. This is not an easy call.

Creditor cites the Court to *In re Robinson*, 449 B.R. 473 (Bankr. E.D. Va. 2011), a decision where, as here, a debtor-father had part-time physical custody of his children. The bankruptcy court decided the best way to accommodate such a situation was to treat each child as "a fractional member of the household." 449 B.R. at 482. In other words, the court mathematically determined that, based on the number of days per week any given child lived with the debtor, the debtor's four children were only

---

[14] Given the facts of this case, the Court need not determine whether household members must also be related to a debtor.

[15] Because the Court's approach does not fit neatly within the "economic unit" approach as it has evolved, perhaps another name, such as the "financial dependence" approach, is more appropriate.

MEMORANDUM OF DECISION - 17

the equivalent of "two full members of the economic unit."[16]  *Id.*  In that

manner, the court concluded it was accurately calculating the means test

based on the debtor's "functional economic unit."  *Id.*

There is no textual or other indication in the Code, however, to show

that Congress intended debtors to calculate "fractional dependents," or

"fractional household members," in completing means test calculations.

Admittedly, a debtor who has children living with him for only a portion

---

[16]  Creditor's proposal complicates this formula even more.  Per her
calculations, Debtor has only a 0.34 fractional interest in his children for means
test purposes.  Because the standardized expense amounts issued by the IRS are
only produced in terms of "whole" persons, Creditor proposes that, for each
standardized expense, Debtor should:

> (1)  Calculate the difference between a household of 1
> and a household of 2;
> (2)  Multiply by .34; and
> (3)  Add the result to the allowed amount for a
> household of 1 to arrive at the allowed deduction for
> these line items.

Creditor's Post-Trial Reply Brief at 8, Dkt. No. 37.  Presumably, similar arithmetic
would be required to determine a comparable median family income, which,
again, is only reported in terms of "whole" persons.  Essentially, rather than
relying upon independently-produced, uniform statistics and information, as
directed by the Code, *see* §§ 707(b)(2)(A)(ii)(I), (b)(6), (b)(7), Creditor proposes
that Debtor create his own statistics and information from a complicated,
unsupported mathematical scheme.  Given the complexities of the calculations,
the Court has grave doubts with this suggestion.

MEMORANDUM OF DECISION - 18

of the month will incur a lesser amount of actual monthly expenses than a

debtor whose children live with him full time.[17]  For many of the means

test expense categories, however, debtors are required to claim expenses

based on standardized amounts, rather than their actual expenses.  *See*

§ 707(b)(2)(A)(ii)(I).  When Congress adopted a means test that relies on

uniform standards, it endorsed the notion that those standards, depending

upon the facts, would be either over- or under-inclusive.  *Ransom v. FIA*

*Card Servs., N.A.*, 131 S.Ct. 716, 729 (2011).  In designing the Code,

"Congress chose to tolerate the occasional peculiarity that a brighter-line

test produces."[18]  *Id.*

---

[17]  At the same time, some of a part-custody parent's expenses will likely
be the same as a full-custody parent's.  For example, even if his children only live
with him for four days out of any given month, a debtor will likely incur housing
expenses for a house or apartment large enough to accommodate the children
when they are with him.  In addition, that debtor's vehicle choices and
ownership costs are impacted, at least to some extent, by the need to transport
young passengers.

[18]  In essence, the result of allowing Debtor to count each of his part-
custody children as a "whole" dependent for means test purposes is no different
than if his children lived with him full time but he was obsessively frugal.  In
either situation, the § 707(b)(2) means test allows Debtor to claim a standardized
expense amount far beyond his actual expenses.  That, however, is a result

(continued...)

MEMORANDUM OF DECISION - 19

Because Debtor's two children may reside with him for a portion of each month, and because those children are his financial dependents, the Court concludes they should be counted as part of Debtor's household for means test purposes.[19]  Debtor's amended means test Form B22A therefore appropriately calculates expenses based on a household of three.

## II.   Debtor's Form B22A expenses for childcare must be reduced to his actual expenses.

Section 707(b)(2)(A)(ii)(I) provides:

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and *the debtor's actual monthly expenses* for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides . . . .

---

[18](...continued)
Congress chose to tolerate.

[19]  The Court understands this result allows Creditor to also claim the children as members of her household if she were to file a bankruptcy case.  Both children also live with her in any given month, and are her financial dependents as well.  But this result simply reflects reality.  Again, there is no indication Congress intended to limit children in split-custody situations to being claimed as household members by only one parent.

MEMORANDUM OF DECISION - 20

(emphasis added).  The Supreme Court, in *Ransom v. FIA Card Servs., N.A.*,

clarified that, a debtor claiming a National and Local Standards-based

expense is to claim the amount indicated by the IRS's standards, and not

his out-of-pocket expense.  131 S.Ct. at 727.  At the same time, a debtor

claiming an "Other Necessary Expense" must deduct his "actual

expenses."  *Id.*

Among the "Other Necessary Expense[s]" is childcare.  As instructed

on Form B22A, debtors are to "[e]nter the total average monthly amount

that [they] actually expend on childcare—such as baby-sitting, day care,

nursery, and preschool."  Form B22A, line 30.  Based on the evidence

presented at the hearing, the Court determines Debtor's average monthly

actual childcare expense is $150 per month.

The difference between Debtor's claimed childcare expense of $500

per month and his actual expense of $150 per month results in a change in

his monthly disposable income under § 707(b)(2) from negative $235.56 to

positive $114.44.  Thus, Debtor has a 60-month disposable income under

§ 707(b)(2) of $6,866.40.  Even with that adjustment, however, Debtor's 60-

MEMORANDUM OF DECISION - 21

month disposable income does not meet the threshold to establish a

presumption of abuse under § 707(b)(2).[20]

### Conclusion

Debtor's household size for means test purposes is three persons,

and he may claim means test expenses for himself and his two financially

dependent children, who reside with him part-time in any given month.

At the same time, Debtor is limited to claiming childcare expenses to the

average of his actual paid expenses, which the Court finds to be $150 per

month.  Even with that adjustment, however, a presumption of abuse does

not arise in this case.  Creditor's motion to dismiss pursuant to § 707(b)

will therefore be denied in a separate order.

A separate order will be entered.

Dated:  February 9, 2012

_____
Honorable Jim D. Pappas

---

[20]  The current presumption of abuse threshold amount is $7,025.
§ 707(b)(2)(A)(i)(I).

MEMORANDUM OF DECISION - 22

United States Bankruptcy Judge

MEMORANDUM OF DECISION - 23